M. Caulfield, Plaintiff in Error, *vs.* The State *Ex Rel.* The Attorney General, Defendant in Error.

By an Act passed in December, 1850, the office of Flour Inspector for the Parishes of St. Philip's and St. Michael's was created—the appointment vested in the Governor, and the tenure fixed at two years. By an Act passed in 1851, the Act of 1850 was so amended as to vest the appointment in the City Council of Charleston. In December, 1868, the City Council elected A. Flour Inspector for two years, and he was duly inducted into office. In May, 1869, the City Council, by Ordinance, declared the office vacant, and, in July thereafter, it elected C. to fill the supposed vacancy: *Held,* That the power of the City Council was to appoint merely ; that it had no power to declare the office vacant, and, consequently, that A. was the legal incumbent of the office.

At the common law, an appointment under a power is not revocable, unless expressly made so at the creation of the power.

The first Section of the Act of August 15, 1868, to regulate the tenure of certain offices, &c., did not terminate A.'s office upon the election of a successor—clearly so, as A. was, himself, the successor of the incumbent at the time of the passage of the Act; nor did that Act vest the City Council with power to alter or abridge the tenure of the office, which is a State, and not a municipal office.

Before MOSES, C. J., at Chambers, September, 1869.

This case was brought up, by writ of error, from the Circuit Court for Charleston County, where the original papers remain of record. It was an application to the Chief Justice, at his Chambers, at Sumter, and was based on an affidavit, as follows :

"Personally appeared before me, C. N. Averill, who, being duly sworn, says that he was elected by the City Council of Charleston, on the 29th day of December, 1868, to the office of Inspector of Flour, for the City of Charleston, for the full term of two years, in accordance with the provisions of the Act of Assembly of the said State, in such case made and provided; that he duly qualified, was duly commissioned, and entered upon the duties of the said office, and has continued to discharge the said duties; but one M. Caulfield has, without warrant or authority of law, as this deponent is advised, usurped the said office of Flour Inspector, and claims to exercise the duties thereof; and this deponent having required the said M. Caulfield to desist from the exercise of his said office, and he having refused, this deponent prays that a rule may issue against the said M. Caulfield, to show by what authority he claims to exercise the said office of Flour Inspector."

Upon that affidavit, the following rule, signed by the Chief Justice, was issued:

At Chambers,  
Sumter, S. C., August 24, 1869.

On reading the foregoing affidavit, it is ordered that the said M. Caulfield, therein named, do appear before me, at my Chambers, in Sumter, aforesaid, on the fifteenth day of September next, at ten o'clock A. M., and then and there show by what authority he exercises and enjoys the office of Inspector of Flour, of the City of Charleston; and that this order, and the proceedings in the premises, be entered of the State *ex relatione* the Attorney General, Daniel H. Chamberlain, against the said M. Caulfield.

Let a copy of the said affidavit accompany this order, and be served on the said M. Caulfield.

On the 15th September, 1869, Martin Caulfield, the respondent, filed his return to the rule, under oath. It is as follows:

"A rule having been served upon Martin Caulfield, directing him to appear and show by what authority he holds and claims to exercise the office of Inspector of Flour for the City of Charleston, now comes the said Martin Caulfield, and, in response to said rule, shows:

"1. That, by Section 1 of an Ordinance entitled. "An Ordinance to declare vacant certain offices, and to provide for an election for the same," ratified by the City Council of Charleston, on the 20th day of May, A. D. 1869, the office of Inspector of Flour, then and prior to that time filled by C. N. Averill, was declared vacant.

"2. That, on the 6th day of July, A. D. 1869, public notice thereof of ten days having been given in a city newspaper, the City Council of the city of Charleston, at a regular meeting, did proceed and duly elect to the office of Inspector of Flour for the city of Charleston, said Martin Caulfield.

"3. That, on the 10th day of July, A. D. 1869, the said Martin Caulfield, having first given bond, with good security, approved by the City Council, in the penal sum of two thousand dollars, conditioned for the faithful discharge of his said office, was duly qualified by taking the oath prescribed by law, and commissioned as Inspector of Flour for the city of Charleston.

"4. That, on the 15th day of July, A. D. 1869, the said Martin Caulfield made due and formal demand upon the said C. N. Averill,

late Inspector of Flour for the city of Charleston, to vacate and surrender said office to him, said Martin Caulfield. That, from that time henceforth, the said Martin Caulfield has assumed and exercised the duties pertaining to the said office of Inspector of Flour, for the city of Charleston, as by law he was and is entitled to do.

" And this respondent, having fully answered the premises, begs to be hence dismissed with his reasonable costs, in this behalf most wrongfully sustained."

The Attorney General, prosecuting for the State, demurred to the return, and the respondent joined in demurrer.

The pleadings being closed, and counsel for the relator and the respondent having been fully heard, the Chief Justice delivered his opinion and judgment, as follows:

MOSES, C. J.    The information in this case relates to the office of Inspector of Flour for the city of Charleston. The office referred to is Inspector of Flour for the Parishes of St. Philip's and St. Michael's, as it is properly called in the argument of Mr. Tharin for the respondent.

It sets forth the election of C. N. Averill, by the Council, on the 29th day of December, 1868, for the full term of two years, his assumption of the office, and discharge of its duties, until usurpation and possession of it by the said M. Caulfield, who claims to exercise the duties appertaining to the same, and prays process of *quo warranto* against the said Caulfield.

The office was established and the term fixed by the Legislature. With this exception, the facts and the pleadings are the same as submitted in the case of the *State Ex Relatione The Attorney General* vs. *Patrick J. Coogan*, (*a.*) and the questions arising have been there considered and decided.

An additional point has been made here by the counsel now representing the respondent.

The Act "to provide for the inspection of flour" was passed on the 20th December, 1850, and required and authorized the Governor, on or before the 25th day of the same month, to appoint the Inspector, who was to continue in office for two years.

On the 21st December, 1854, the Act was amended, and the appointment conferred on the City Council.

It is claimed that the election by the Council on the 29th Decem-

(*a.*) See next case.

Caulfield *vs.* The State.

ber, 1868, was against law, and the election of Caulfield, therefore, valid.

For the proper understanding of this question, the day of the first election, under the 'Act of 1854, should have been made known to the Court, by the pleadings or otherwise, so that the date of the expiration of the term thereunder could be ascertained.

It could not have been the intention of the Legislature that the time fixed by the Act of 1850 was to be mandatory on the Council. So to consider it, would charge the Legislature with the absurd requisition of an impossibility. The Act was not ratified until the 21st; and how could the election be made by the 25th, when, by law, ten days' notice of the election for every city office is to be given in the public papers?

Was it to remain vacant until the next ensuing 25th December ?

I am not even satisfied that the period fixed for the appointment by the Governor, in the Act of 1850, bound the Council to an election by the same day, under the power given to it by the Act of 1854.

It is not my purpose to consider the point at any length. I shall only refer to what is said by the Court in the case of *The People* vs. *Runkle*, 9 Johns., 147: "The trustees elected after the day would be in by color of office; that the election would not be void, and their acts would be good, and the irregularity, if any, would cure itself in a subsequent year."

The State is entitled to judgment of ouster against the respondent, M. Caulfield.

It is, therefore, ordered, that the respondent, M. Caulfield, do not, in any manner, further intermeddle with, or concern himself about, the said office of Inspector of Flour, or with the duties, rights, books and property of the said office, but that he be absolutely judged and excluded from exercising or using the same, or any of them, for the future, and that he abstain from doing or performing, or assuming to do or perform any act or acts whatsoever, in any manner pertaining to the said office, on pain of contempt of the Court.

Let all the papers be filed in the office of the Clerk of the Court for the County of Charleston.

The case was now heard in this Court.

*Corbin*, for plaintiff in error.

*Lesesne & Miles*, contra.

May 13, 1870.   The opinion of the Court was delivered by

CARPENTER, J., sitting in place of the Chief Justice.   The office of Inspector of Flour for the Parishes of St. Philip's and St. Michael's was created by the Act of Assembly of December 20, 1850. The Inspector was to be appointed by the Governor, and hold his office for two years; to give a bond to the State, and take an oath of office, before the Clerk of the Court of Common Pleas, for the performance of the duties of his office.   The office thus created was a State office.   The Act of 1854 amended the foregoing Act by transferring the power of appointment from the Governor to the City Council of Charleston; but the amendment did not change the character of the position by making it a municipal instead of a State office; nor did it give the City Council of Charleston any power or authority to alter or abridge the nature or tenure of the office.—12 Stat., 8, 316.

It is a well settled principle of the common law, that, in all cases of appointments under powers, the appointment is not revocable, unless expressly made so at the creation of the power.   When an appointment is made, the party, in contemplation of law, takes immediately from the creator of the power.   An officer thus created is the creature of the law which confers the power of appointment, and he holds his position the same as if his name had been specially mentioned in the statute.—*Shower*, 523, cited in *ex parte Hennen*, 13 Peters, 230.

The City Council of Charleston having, on the 29th of December, 1868, appointed C. N. Averill to the office of Inspector of Flour, under authority of the Acts of 1850 and 1854, for the term of two years, subsequently, by an Ordinance ratified May 20, 1869, declared that and certain other offices vacant, and provided for an · election to fill the vacancies thus created; and, under the operation of this Ordinance, the City Council of Charleston proceeded to elect Mr. Caulfield, the plaintiff in error, to the office of Inspector of Flour.

In my judgment, the Ordinance of the City Council of Charleston, of May 20, 1869, did not make the office of Flour Inspector vacant, because the City Council had no power or authority to abridge the tenure of the office, which was created and regulated by the State.   As we have seen, the power of appointment of the officer, conferred by the Legislature upon the City Council, does not carry with it the power of removal, or to abridge the term of office.

30

The counsel for the plaintiff in error insists that, pursuant to the first Section of the Act to regulate the tenure of certain offices, the appointments thereto, and for other purposes, ratified August 15, 1868, the right of C. N. Averill to the office of Flour Inspector was terminated by the election of Martin Caulfield thereto. I had occasion to give construction to the Act referred to in a judgment pronounced in the case of *The State Ex Rel. The Attorney General* vs. *Henry Trescott.* In that case, I held that the office then in question, that of Register of Mesne Conveyance, not being one of those provided for by the Constitution, was liable to be altered or abolished by the legislative powers of the State, upon the organization of the permanent Government. But the General Assembly, having chosen not to amend the Act, or to abolish the office, but to provide, instead, that the incumbent should remain in office until his successor should be elected and qualified, I held that the word "until," in the above connection, was a word of limitation, the meaning of which was that he should continue in office until the election or appointment and qualification of his successor, according to law, and *no longer.* To this construction of the statute I shall adhere, although recognizing the force of the reasoning of the counsel for the defendant in that case.

But I am not prepared to extend the effect and operation of the Act of August 15, 1868, beyond what I then conceived to have been its necessary meaning, if it was to have any meaning at all; for it is, in general, true, that a statute shall not be so construed as to operate retrospectively, or to take away any right, unless it contains either an enumeration of the cases in which it is to have such an operation, or words which can have no meaning unless such construction is adopted—Broom's Legal Maxims, 29. To give to the Act of 1868 the operation contended for in behalf of the plaintiff in error, will not only be to extend it, by implication, to a case not within those enumerated, but to repeal a former and express statute; and implied repeals are not favored by the law, since they carry with them a tacit reproach that the Legislature thus ignorantly, and without knowing it, made one Act repugnant to and inconsistent with another.—Broom's Legal Maxims, 24.

But, admitting the right and power of the Legislature to repeal its former Act, by implication, by the passage of a subsequent and inconsistent Act, it cannot be held that the Legislature has delegated to a municipal corporation the power to repeal an Act of the Legislature, or to alter or abridge the tenure of offices created by

the Legislature, without the most explicit declaration of such intent, or the most absolutely necessary implication. It has been held that the Legislature cannot confer upon a municipal corporation the power to repeal, by Ordinance, a statute of the State.—Abbott on Corporations, 491. It is certain that the case is not expressly referred to in the statute; and, in my judgment, it cannot be maintained by necessary implication. The cause of exclusion from office of Averill does not proceed from the Act itself, but from the election held by the City Council, under their Ordinance declaring the office vacant. If the election of Flour Inspector had been postponed until the existing tenure of office had expired by the Act itself, no right would have been violated. The wrong done is by the Ordinance of the city interpreting the Act as declaring the office vacant as a necessary implication from its language. The Ordinance of the City Council which declares the office vacant is, therefore, *null and void*.

But, whether I am right or not, in the foregoing conclusions, there is another fact in the case which has not been adverted to in argument, but which seems to me to be entirely conclusive upon the point that the City Council of Charleston derived from the Act to regulate the tenure of certain offices and appointments no authority to declare vacant the office of Flour Inspector. The Act itself, as we have seen, was ratified on the 15th of August, 1868, when the office of Flour Inspector was held by another person, while Mr. Averill, the relator, was elected on the 29th of December following. The Act, if it had any application to the office of Flour Inspector, *operated upon the incumbent of that office at the time of the passage of the Act*, who had been appointed thereto under the Provisional Government, or under military authority, and whose office was terminated upon the appointment and qualification, according to law, of a Flour Inspector—that is, upon the appointment and qualification of C. N. Averill. The Act of August 15, 1868, simply declares that certain officers shall hold their offices until their successors shall be duly elected or appointed. Supposing the office of Flour Inspector to be one of those embraced in the Act, then Mr. Averill was the successor of the incumbent of the office appointed under military authority or the Provisional Government; and the Act cannot refer to Mr. Averill, because he was not appointed under authority of either, but was elected by the City Council, under authority of a law of the State.

For these reasons, as well as those given in the opinion of the

Chief Justice, I am of the opinion that the judgment of ouster upon the information should be sustained, and the writ of error dismissed.

*Willard,* A. J., concurred.

*Wright,* A. J., dissented.

---

P. J. COOGAN, PLAINTIFF IN ERROR, *vs.* THE STATE *Ex Relatione* THE ATTORNEY GENERAL, DEFENDANT IN ERROR.